IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDA L. BOYD,

       **Plaintiff,**

       vs.                                                                                                      **Civil Action No. 2:09 CV 67**
                                                                                                                                                  **(Maxwell)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## <u>ORDER</u>

It will be recalled that the above-styled social security appeal was instituted on June 1, 2009, with the filing of a Complaint by the Plaintiff, Linda L. Boyd.

It will further be recalled that the case was referred to United States Magistrate Judge David J. Joel in accordance with Rule 83.12 of the Local Rules of General Practice and Procedure.

On September 3, 2009, a Brief In Support Of Plaintiff Boyd's Claim for Relief was filed on behalf of the Plaintiff, and on October 1, 2009, a Motion For Summary Judgment and Brief In Support thereof were filed on behalf of the Defendant.

On December 2, 2009, Magistrate Judge Joel entered a Report And Recommendation ("R&R") wherein he recommended that the Defendant's Motion For Summary Judgement be granted; that the Plaintiff's Motion For Summary Judgment (Brief In Support Of Plaintiff Boyd's Claim For Relief) be denied; and that the decision of the Administrative Law Judge be affirmed. In said R&R, the parties were directed, in

accordance with 28 U.S.C. §636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court within ten (10) days after being served with a copy of said R&R.  Magistrate Judge Joel's R&R expressly provided that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

The docket in the above-styled civil action reflects that Plaintiff Boyd's Objections To Report And Recommendation were filed on December 14, 2009.  In her Objections, the Plaintiff objects to the Magistrate Judge's finding that the Administrative Law Judge ("ALJ") did not err by disregarding her allegations of elbow and sleep apnea impairments and to the Magistrate Judge's finding that the ALJ properly determined not to give controlling weight to the findings of her treating physician, Cherian John, M.D., as set forth in his 2008 physical residual functional capacity assessment.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which objection is made.  The Court is not, however, required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the findings or recommendation to which no objections are made.  Thomas v. Arn, 474 U.S. 140, 150 (1985).

As previously noted, on December 14, 2009, the Plaintiff filed her Objections To Report And Recommendation.  The Court has conducted a *de novo* review only as to the portions of the R&R to which the Plaintiff objected.  The remaining portions of the R&R to which the Plaintiff has not objected have been reviewed for clear error.

After reviewing Magistrate Judge Joel's R&R; Plaintiff Boyd's Objections thereto;

and the entire record in this matter, this Court believes, for the following reasons, that it is appropriate to reject said R&R, in part, and to remand this matter back to the Commissioner for a new hearing.

**I      The Administrative Law Judge erred in failing to consider any limitations and restrictions imposed by all of the Plaintiff's impairments, even those that are not "severe"**

In her first objection to Magistrate Judge Joel's R&R, the Plaintiff argues that the Magistrate Judge incorrectly found that it was proper for the ALJ not to consider the Plaintiff's elbow condition and her sleep apnea since he did not find them to be severe impairments at step two of the sequential evaluation process. In support of her first objection, the Plaintiff points out that 20 C.F.R. § 404.1523 expressly provides that the Commissioner is required to consider the combined effect of all impairments, including multiple non-severe impairments, in determining if a claimant's overall condition meets the requirement to be considered severe.

It appears to the Court that neither the Defendant nor the Magistrate Judge really address the Plaintiff's first objection. Instead, both the Defendant and the Magistrate Judge merely address the issue of whether the ALJ was correct in determining that the Plaintiff's elbow condition and her sleep apnea were not severe impairments. They never speak to the true issue raised by the Plaintiff, namely, whether it was improper for the ALJ to fail to consider even those impairments he found not to be severe in formulating her RFC.

Section 423(d)(2)(B) of Title 42 of the United States Code expressly provides that "[i]n determining whether an individual's physical or mental impairments are of a

sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 20 C.F.R. § 404.1523 further addresses multiple impairments and provides as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Additionally, SSR 96-8p expressly provides as follows in this regard:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

The United States Court Of Appeals for the Fourth Circuit has repeatedly held that an ALJ must consider the combined effect of a claimant's impairments in determining whether said impairments are of sufficient severity to prohibit work related

activities. In this regard, the Fourth Circuit Court of Appeals notes:

> this court has held that in determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments. *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985); *DeLoatche v. Heckler*, 715 F.2d 148, 149 (4th Cir. 1983): *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). It is also clear that the ALJ must adequately explain his or her evaluation of the combined effect of impairments. *Reichenbach*, 808 F.2d at 312. This rule merely elaborates upon the general requirement that a ALJ is required to explicitly indicate the weight given to relevant evidence. *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987); *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984).

Hines v. Bowen, 872 F.2d 56 at 59 (1989).

Finally, in his Decision, the ALJ even expressly acknowledges that he is required to consider all of a claimant's impairments, even those that are not severe, in making the residual functional capacity assessment. In this regard, the ALJ notes:

> An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

(Tr. 13).

Based on the express language of 42 U.S.C. § 423(d)(2)(B), 20 C.F.R. § 404.1523, and SSR 96-8p; longstanding precedent established by the United States Court of Appeals for the Fourth Circuit; and the ALJ's own acknowledgment in his Decision, the Plaintiff is correct that the ALJ was required to consider even those impairments which he found not to be severe when assessing her RFC.

5

A review of his November 7, 2008, Decision reveals that the extent of the ALJ's discussion of the Plaintiff's sleep apnea was to explain why he found this impairment not to be severe at step 2 of the sequential evaluation process. In this regard, the ALJ wrote in Section 3 of his Decision, "The claimant also has obstructive sleep apnea (Ex. 17F) and hypertension. However, there is no indication that these conditions have resulted in any functional limitations." (Tr. 15). No mention of the Plaintiff's elbow condition is made by the ALJ at step 2 of the sequential evaluation process. Additionally, neither the Plaintiff's sleep apnea nor her elbow condition are discussed by the ALJ during his assessment of her RFC.

As the Plaintiff asserts in her Brief In Support of her claim for relief, the record in this case does contain medical evidence supporting her claim that she suffers from sleep apnea. In a July 21, 2008, letter from Brijinder S. Kochhar, M.D., to Saieed Saieed, M.D., Dr. Kocchar, to whom the Plaintiff had been referred by Dr. Saieed, her primary care physician, for evaluation of a persistent cough, indicates that the Plaintiff complained of some excessive sleepiness during the day. (Tr. 352). In light of the Plaintiff's complaints of excessive sleepiness, Dr. Kocchar referred the Plaintiff for a diagnostic sleep study. In a July 2, 2008, letter to Dr. Saieed, Dr. Kocchar indicates that the diagnostic sleep study found the Plaintiff to have "significant obstructive sleep apnea." Accordingly, Dr. Kocchar recommended that a CPAP titration study for therapeutic purposes be done and that the Plaintiff be advised not to drive or use machinery while feeling sleepy and not to use sedatives, hypnotics or alcoholic beverages while her obstructive sleep apnea was untreated. (Tr. 355).

Given that the ALJ failed to consider any limitations and restrictions imposed by

6

the Plaintiff's sleep apnea when assessing her RFC, his determination that the Plaintiff was able to perform a full range of light work is suspect. Because the ALJ failed to comply with 20 C.F.R. § 404.1523 and SSR 96-8p, the Court agrees with the Plaintiff that the ALJ committed an error of law that requires reversal and remand for reevaluation of the Plaintiff's RFC in the required manner, specifically considering any limitations and restrictions imposed by all of the Plaintiff's impairments, even those he found not to be severe, such as her sleep apnea.

The Court cannot, however, agree with the Plaintiff's assertion that the record in this matter contains medical evidence supporting her claim of impairment due to an injury to her right elbow. In her Brief In Support of her claim for relief, the Plaintiff asserts that she sustained an occupational injury to her right elbow which required surgery in 1993. In an undated Disability Report - Adult which she submitted to the Social Security Administration in support of her claim, the Plaintiff identifies the injury to her elbow and indicates that she "can't write for any length of time because my arm gets really weak and sore." (Tr. 95). In her Personal Pain Questionnaire dated April 21, 2007, the Plaintiff asserts that she experiences aching, stinging and cramping in her elbow when she holds a pen, types or holds on to anything tightly. (Tr. 139). In a February 20, 2007, Disability Determination Examination Report, Joseph Schreiber, D.O., indicates that the Plaintiff reports that her right elbow will cramp if she writes for too long a period. (Tr. 194).

It is on Dr. Schreiber's Disability Determination Examination Report that the plaintiff relies for medical evidence supporting her claim of impairment due to elbow injury. In this regard, the Plaintiff writes in her Brief In Support of her claim for relief, "In

7

the present claim, the ALJ failed to consider the claimant's allegations of impairment due to her elbow injury which was examined and reported by Dr. Schrieber. [Record at 194]." (Doc. 7 at 6). Beyond indicating that the Plaintiff advised him that she experiences aching, stinging and cramping in her elbow when she holds a pen, types or hold on to anything tightly, however, Dr. Schrieber's Report does not provide any medical evidence to support a claim of impairment based on elbow injury. To the contrary, Dr. Schrieber reports that the Plaintiff's elbow "is without heat, erythema, tenderness, effusion, or crepitus." (Tr. 196). Additionally, Dr. Schrieber's Report describes the Plaintiff's typical day as follows:

> The claimant is able to do all of her normal ADLs. She does drive. She had been living alone, and doing all of her normal household chores, but has been currently living with her 34-year-old son for the past month while she is in the process of buying a new house. She anticipates living alone at that time.

(Tr. 195). Finally, as noted by the Defendant in his Brief In Support Of His Motion For Summary Judgment, Dr. Schrieber's physical examination found the Plaintiff to have almost a full range of motion in her right elbow. (Tr. 197). Because there is no actual medical evidence in the record to support the Plaintiff's claim of impairment due to elbow injury, the Court finds that the ALJ was correct in not addressing it as an impairment in his Decision.

**II    The Administrative Law Judge did not err in determining not to give controlling weight to the findings of the Plaintiff's treating physician, Cherian John, M.D., as set forth in his 2008 physical residual functional capacity assessment.**

In the Plaintiff's second objection to Magistrate Judge Joel's R&R, she argues that the Magistrate Judge incorrectly upheld the ALJ's decision not to give controlling weight to the findings of her treating physician, Cherian John, M.D., as set forth in his 2008 physical residual functional capacity assessment. In this regard, the Plaintiff suggests that the ALJ rejected Dr. John's functional assessment based substantially on the fact that he expressed his opinions on a fill-in-the-blank type form. The Plaintiff contends that the ALJ failed to review the record to make specific findings as to why the restrictions imposed by Dr. John were not supported by medically accepted clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record.

The Defendant contends that the ALJ reasonably found Dr. John's opinion was not entitled to significant weight because his opinion was not well supported by laboratory diagnostic techniques; by the clinical evidence of record; or by the other evidence of record and that he fully discussed his findings in this regard.

The evaluation of opinion evidence, including that from a treating physician, is addressed at 20 C.F.R. § 404.1527(d) and provides as follows:

> (D) *How we weigh medical opinions*. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) *Examining relationship*. Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) *Treatment relationship*. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(I) *Length of the treatment relationship and the frequency of examination*.  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the sources' medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) *Nature and extent of the treatment relationship*.  Generally the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.  We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.  For example, if your ophthalmologist notices that you have

complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) *Supportability*. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency*. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) *Specialization*. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist.

(6) *Other factors*. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

The United States Court of Appeals for the Fourth Circuit has long held that

"'[t]he opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence. *See, e.g.*, Mitchell v. Schweiker, 699 F.2d 185 (1983)." Evans v. Heckler, 734 F.2d 1012 at 1015 (1984). Additionally, there is in this Circuit a long-standing five-step analysis that an ALJ must use when considering treating source opinions. As recently reaffirmed by the Fourth Circuit Court of Appeals in the case of Hines v. Barnhart, the five steps that an ALJ must use are as follows:

> The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."

453 F.3d 559 at 563 (2006).

Having carefully reviewed the entire record in this matter, the Court agrees with the Magistrate Judge and the Defendant that the ALJ did not improperly reject Dr. John's opinion but considered it following the requirements set forth in 20 C.F.R. § 404.1527(d) and the process set forth by the Fourth Circuit Court of Appeals in Hines v. Barnhart. Additionally, contrary to the Plaintiff's assertions, the Court finds that the ALJ did not reject Dr. John's opinion based primarily on the fact that he expressed his opinions on a fill-in-the-blank type form. To the contrary, it is clear to the Court that the ALJ rejected Dr. John's opinion primarily because he found it was not supported by Dr. John's own clinical findings; other objective medical evidence; and other evidence of record.

In his Decision, the ALJ provides the following discussion of the opinion expressed by Dr. John's in his October 23, 2008, functional capacity questionnaire:

> As for the opinion evidence, the claimant relies upon a functional capacity questionnaire completed by Dr. John on October 23, 2008. Dr. John opined that his patient could sit continuously for two hours and stand continuously for one-half hour. She could lift up to 20 pounds occasionally, but stand or walk less than two hours and sit about four hours in an eight-hour day.
>
> The Social Security Administration accords controlling weight to the opinion of a treating physician where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence, 20 CFR § 404.1527(d). However, this rule does not apply to statements of opinion upon the ultimate issue of disability, which is reserved to the Commissioner. 20 CFR § 404.1527(e). Moreover, the opinion expressed by Dr. John that Ms. Boyd is not capable of completing a full eight hour day is purely conclusory, without any supporting explanation or rationale. It is similar to form reports in which a physician's obligation is only to check a box or fill in a blank. Such conclusions are weak evidence at best. *Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993)*.
>
> In this case, Dr. John offers no explanation or rationale for this conclusion that the patient can stand or walk only up to two hours and sit only four hours in an eight hour day. This conclusion appears to be inconsistent with the other indication that she can stand four about one-half hour continuously and sit for two hours continuously. These limitations are inconsistent with the claimant's report to him that she is doing well and carrying out all normal activities of daily living with only occasional fatigue. The limitation is not consistent with the fact that she now has normal left ventricular function. It is noted that Dr. John also recommended that his patient have the option to elevate her leg about 30° for 10% of the time during the day. An option to elevate one's leg to a limited extent up to 10% of the time while she is otherwise seated would not be inconsistent with

13

> work at the light exertional level.
>
> At the state agency, Dr. Lauderman opined that the claimant could perform light work and occasionally perform all normal postural activities, avoiding exposure to hazardous operations and avoiding concentrated exposure to extremes of temperature or vibration (Ex. 11F) Substantial weight is assigned to that opinion by Dr. Lauderman, since he is experienced in the evaluation of impairments in the context of the Social Security regulations. Moreover, his opinion is consistent with his observation that the medical evidence shows the claimant to have normal gait and strength in all extremities and that she retains a good ability to carry out her activities of daily living.

(Tr. 16-17).

Based on the foregoing very thorough discussion by the ALJ of why he discounted Dr. John's opinion, it is clear to the Court that he did not do so based on the fact that Dr. John expressed his opinion on a fill-in-the-blank type form but based on the fact that his opinion was not supported by laboratory diagnostic techniques; by the clinical evidence of record; and by other substantial evidence of record. These are all permissible and, in fact, required considerations pursuant to 20 C.F.R. § 404.1527(d). Accordingly, this Court finds that the ALJ properly considered the opinion of the plaintiff's treating physician, Cherian John, M.D., as required by 20 C.F.R. § 404.1527(d) and following the five-step analysis utilized by the Fourth Circuit Court of Appeals and set forth in Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

For all of the foregoing reasons, it is

**ORDERED** that Magistrate Judge Joel's December 2, 2009, R&R (Doc. 10) be, and is hereby, **ACCEPTED in part and REJECTED in part**. Accordingly, it is

**ORDERED** that:

1. The Plaintiff's Motion For Summary Judgment (Brief In Support Of Plaintiff Boyd's Claim For Relief) (Doc. 7) is **GRANTED, in part, and DENIED, in part**;

2. The Defendant's Motion For Summary Judgment (Doc.8) is **GRANTED, in part, and DENIED, in part**; and

3. The Commissioner's decision is **REVERSED**, and this civil action is **REMANDED** to the Commissioner of Social Security pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Court's decision. Specifically, the above-styled civil action is remanded with instructions that the Administrative Law Judge reevaluate the Plaintiff's RFC in the required manner, specifically considering any limitations and restrictions imposed by all of the Plaintiff's impairments, even those he found not to be severe, such as her sleep apnea.

In accordance with <u>Shalala v. Schaefer</u>, 125 L.Ed.2d 239 (1993), it is further

**ORDERED** that the Clerk of Court shall enter **JUDGMENT** reversing the decision of the Defendant and remanding the cause for a rehearing and shall thereafter **DISMISS** this action from the docket of the Court.

Counsel for the Plaintiff is advised that an application for attorney's fees under the Equal Access to Justice Act (EAJA), if one is to be submitted, must be filed within 90 days from the date of the judgment order.

The Clerk of Court is directed to transmit copies of this Order and the Judgment Order to counsel of record.

**ENTER:** May   28  , 2010

  **/S/ Robert E. Maxwell**
United States District Judge
